887 P.2d 625

**MERCY HEALTHCARE ARIZONA, INC. dba St. Joseph's Hospital and Medical Center, Plaintiff–Appellant,**

v.

**ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM, an agency of the State of Arizona and Mabel Chen, M.D. in her capacity as director of the AHCCCS Administration, Defendants–Appellees.**

No. 1 CA–CV 94–0046.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 27, 1994.

Gammage and Burnham, P.L.C. by Richard B. Burnham, Susan L. Watchman, Margo S. Kirchner, Phoenix, for plaintiff-appellant.

Johnston Maynard Grant and Parker, P.L.C. by Logan T. Johnston, Phoenix, for defendants-appellees.

## OPINION

McGREGOR, Presiding Judge.

Mercy Healthcare Arizona, Inc. (Mercy) challenges the trial court's determination that the obligation of the Arizona Health Care Cost Containment System (AHCCCS) to reimburse Mercy for emergency medical care to an undocumented alien ended when the patient no longer required acute care. The primary issue on appeal is whether the trial court correctly interpreted the term "emergency medical condition" in Ariz.Rev. Stat.Ann. ("A.R.S.") section 36–2905.05 (1993).

### I.

On July 17, 1993, F.L., an undocumented alien, suffered serious injuries in a single vehicle, high-speed rollover accident. Comatose and suffering from a severe closed head injury, F.L. was transported to St. Joseph's Hospital (the Hospital). The Hospital treated F.L. until August 11, 1993, when the Hospital transferred him to St. Joseph's Care Center (the Care Center), a skilled nursing care facility. At the time of transfer, F.L. was non-verbal, could not move his lower extremities, had a gastrointestinal tube for feeding, and had a tracheostomy. On November 22, 1993, the Care Center discharged F.L. to his son's care. Mercy sought compensation from AHCCCS for F.L.'s treatment at the Hospital and at the Care Center.

Arizona administers AHCCCS, the state's Medicaid program, pursuant to Title XIX of the Social Security Act, 42 U.S.C. sections 1396 to 1396v (1988 & Supp. V 1993). *See* A.R.S. §§ 36–2901 to –2975 (1993 & Supp.1994). To participate in the federal Medicaid program, a state must provide medical benefits to members of certain defined groups of low income people. Those groups are "categorically eligible" to receive medical benefits. In Arizona, AHCCCS pro-

vides those benefits, and the federal government pays for a portion of their care. 42 U.S.C. § 1396; A.R.S. § 36–2901.4(b).

The federal government does not require a state to extend coverage to people other than those who are categorically eligible. If a state chooses to extend treatment to other groups, the state assumes the cost of health care for those "non-categorical" individuals. Arizona elected to extend coverage to three non-categorical groups: those deemed "medically needy/medically indigent" (MN/MI) under an income and financial resources test, eligible low income children, and eligible assisted children. A.R.S. §§ 36–2901.4(a), (c), –2905, and –2905.03.

In 1993, the Arizona legislature amended the AHCCCS statutes to limit the care available to undocumented aliens who otherwise are MN/MI eligible [1] to those "[s]ervices ... necessary to treat an emergency medical condition as defined in § 1903(v) of the social security act." A.R.S. § 36–2905.05. After that amendment took effect, AHCCCS no longer enrolled non-categorical, undocumented aliens in a "plan," as usually occurs for AHCCCS-eligible MN/MI people. *See* A.R.S. § 36–2909.C. AHCCCS, therefore, no longer provided non-emergency coverage to undocumented aliens.

AHCCCS determined that F.L. met its MN/MI financial and residency requirements, but AHCCCS did not enroll F.L. in a "plan" because he was an undocumented alien. Rather, AHCCCS assumed responsibility for managing his care. AHCCCS authorized F.L.'s treatment through August 9, 1993, but refused to pay expenses incurred after that date. Mercy then brought this action in superior court. After considering cross-motions for summary judgment, the trial court entered judgment in favor of AHCCCS. Mercy appeals. We have jurisdiction pursuant to A.R.S. section 12–2101.A (1994).

### II.

To grant a motion for summary judgment, the trial court must find that no

---

1. Undocumented aliens are those who do not meet the alienage requirements of the federal Medicaid program as implemented by 42 C.F.R.

435.406(a) under authority from 42 U.S.C. section 1302 (1988).

genuine issue of material fact exists in the record and that the moving party is entitled to judgment on the merits as a matter of law. *Orme Sch. v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). We review issues of law, such as questions involving statutory interpretation, *de novo. Arizona State Bd. of Accountancy v. Keebler,* 115 Ariz. 239, 241, 564 P.2d 928, 930 (App.1977). We view the facts in the light most favorable to the party opposing the judgment. *Grain Dealers Mut. Ins. Co. v. James,* 118 Ariz. 116, 118, 575 P.2d 315, 317 (1978). When the trial court applies the incorrect test to the facts, we may reverse even if the record would have supported a judgment if the trial court had applied the correct test. *See Jaimes v. Industrial Comm'n,* 163 Ariz. 307, 310, 787 P.2d 1103, 1106 (App.1990). Further, if our review reveals that reasonable inferences about material facts could be resolved in favor of either party, we must reverse and remand for a trial on the merits. *United Bank v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

We conclude that the trial court erred as a matter of law in construing A.R.S. section 36–2905.05. We further conclude that material issues of fact remain under the statute as construed in this opinion. We therefore reverse and remand for further proceedings.

### A.

The parties agree that under A.R.S. section 36–2905.05, undocumented aliens receive medical benefits for "emergency medical conditions." The parties, however, hold widely divergent views of what constitutes an "emergency medical condition" for purposes of the statute.

■ Mercy contends that if an undocumented alien initially suffers from an emergency medical condition, AHCCCS must cover the patient's treatment so long as the emergency medical condition necessitates uninterrupted care. AHCCCS argues, and the trial court apparently agreed, that an emergency medical condition exists only when (1) the patient suffers from acute symptoms *and* (2) the acute symptoms require immediate medical attention to avoid further jeopardizing the patient's health or body. AHCCCS asserts that the emergency medical condition and AHCCCS's responsibility end when the emergency condition stabilizes.

■ We reject both these extreme interpretations. When interpreting a statute, our primary goal is to ascertain and give effect to the legislative intent. *Blum v. State,* 171 Ariz. 201, 205, 829 P.2d 1247, 1251 (App. 1992). We look primarily to the language of the statute and give effect to the terms according to their commonly accepted meanings, *see* A.R.S. section 1–213 (1989), unless the legislature provides a specific definition or the context of the statute indicates a specific meaning. *Mid Kansas Fed. Sav. & Loan Ass'n v. Dynamic Dev. Corp.,* 167 Ariz. 122, 128, 804 P.2d 1310, 1316 (1991). Further, statutory language controls our interpretation when the language is clear and unequivocal. *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). In this instance, we believe the statute clearly defines the scope of coverage.

Arizona's legislature provided undocumented aliens with coverage for services necessary to treat "emergency medical conditions" but not "long-term care." *See* A.R.S. § 36–2905.05.D. In covering undocumented aliens, the legislature defined "emergency medical condition" by adopting the standard of section 1903(v) of the Social Security Act. *Id.*

Section 1903(v) of the Social Security Act states:

> "emergency medical condition" means a medical condition (including emergency labor and delivery) manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
>
> (A) placing the patient's health in serious jeopardy,
>
> (B) serious impairment to bodily functions, or
>
> (C) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1396b(V) (1988).

Contrary to AHCCCS's interpretation, the statute does not limit coverage to services for

treatment while acute symptoms continue.[2] Rather, the statute requires that the medical condition manifest itself by "an acute symptom (including severe pain)." The statute then mandates that AHCCCS must cover services for treatment of that medical condition so long as absence of immediate treatment for that condition "could reasonably be expected to result in" one of the three consequences defined by statute.

Neither party disputes that F.L.'s condition manifested itself by acute symptoms or that he suffered from an emergency medical condition through August 9, 1993. The parties do dispute whether he remained in such a condition for all or a portion of the time after August 9, 1993 until his discharge from the Care Center on November 22, 1993.

Mercy submitted affidavits related to F.L.'s medical condition from Timothy R. Harrington, M.D. and Donald McHard, M.D. Dr. Harrington stated that, as of August 11, 1993, "[f]ailure to either keep him at the hospital or transfer him to a skilled nursing facility would have placed his health in serious jeopardy, caused additional serious impairment to bodily functions and caused additional serious dysfunction of organs." In his affidavit, Dr. McHard stated that discharging F.L. on or before October 26, 1993 "would place his health in serious jeopardy and

cause serious impairment and dysfunction. It is highly likely that his condition would deteriorate rapidly, and that he would require readmission to the hospital within days, if not sooner." Neither party presented any evidence of F.L.'s condition after October 26, 1993.[3]

Under the terms of the statute, AHCCCS retained responsibility for F.L. until that point in time that his condition no longer required immediate medical attention to avoid placing his health in serious jeopardy, seriously impairing his bodily functions, or causing serious dysfunction of a bodily organ or part. When that point in time occurred is a material issue of fact that remains in dispute.

Because the trial court applied an incorrect legal test and because a material issue of fact remains, we reverse and remand. *See Allyn,* 167 Ariz. at 195, 805 P.2d at 1016; *Jaimes,* 163 Ariz. at 310, 787 P.2d at 1106.

### B.

■ In addition to arguing that AHCCCS was responsible for the cost of F.L.'s care because it resulted from an emergency medical condition, Mercy asserts that A.R.S. section 36–2909 [4] requires AHCCCS either to

---

**2.** Although we accord great weight to an agency's reading of a statute, we conclude AHCCCS's reading is too narrow. *See Capitol Castings, Inc. v. Arizona Dep't of Economic Sec.,* 171 Ariz. 57, 60, 828 P.2d 781, 784 (App.1992).

**3.** In its answering brief, AHCCCS indicated that Dr. McHard stated during his deposition that F.L. was not receiving active medical care as of November 13, 1993. That deposition is not part of the record before us.

**4.** Section 36–2909 states:
A. Subject to § 36–2908, the administration is retroactively liable for payment for care which was provided in the period of one day prior to the date that a county determines a person eligible and complies with the notice provision set forth in rule.... Uninterrupted care initiated on or before the coverage date as emergency care shall be considered as an emergency admission for purposes of coverage and reimbursement under this section until the person receiving such care is discharged or otherwise transferred pursuant to this section.

B. When a member or person who has been determined eligible receives emergency hospitalization and medical care on or after the date of eligibility determination from a hospital which does not have a contract to care for the person, the administration or the member's provider is liable only for the costs of emergency hospitalization and medical care up to the time the patient is discharged or until the time the patient can be transferred. The administration or the member's provider is also liable for further care:
1. When the attending physician reasonably determines that the condition of the patient receiving emergency hospitalization and medical care is such that it is medically inadvisable to transfer the patient.
2. When the administration or the member's provider does not transport the patient from the hospital providing care after it has been determined that the patient can be transferred.

transfer a patient who is an eligible undocumented alien or to pay for the patient's treatment until the patient is discharged from the initial treating facility. The trial judge concluded that section 36–2909 is irrelevant to AHCCCS's responsibility for F.L.'s care. We agree.

■ A basic principle of statutory interpretation instructs that specific statutes control over general statutes. *City of Phoenix v. Superior Court,* 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984). Further, when a general and a specific statute conflict, we treat the specific statute as an exception to the general, and the specific statute controls. *Kearney v. Mid–Century Ins. Co.,* 22 Ariz. App. 190, 192, 526 P.2d 169, 171 (1974).

Section 36–2909 is a general provision that governs retroactive payments for eligible persons who enroll in an AHCCCS plan. Because undocumented aliens never enroll in an AHCCCS plan, section 36–2909 does not apply. Rather, section 36–2905.05.D, which specifically addresses AHCCCS's liability for services necessary to treat an undocumented alien's emergency medical condition, controls the situation before us.

### C.

■ Mercy also argues that AHCCCS adopted impermissibly vague rules to implement A.R.S. section 36–2905.05. Again, we disagree.

■ A rule is impermissibly vague if it "allows for arbitrary and discriminatory enforcement by failing to provide an objective standard for those who are charged with

enforcing or applying the law." *Maricopa County Juvenile Action, No. JS–5209 & No. JS–4963,* 143 Ariz. 178, 183, 692 P.2d 1027, 1032 (App.1984) (citations omitted). The rule that AHCCCS adopted to identify the emergency services that AHCCCS will cover, consistent with A.R.S. section 36–2905.05.D, limits its coverage to "those services which are medically necessary to treat an emergency medical condition." Arizona Administrative Code (A.A.C.) R9–22–217.B.1.a. The administrative rule defining "emergency medical condition," A.A.C. R9–22–101.45, is entirely consistent with and substantially identical to the statutory definition adopted by A.R.S. section 36–2905.05.[5] We find the rules neither circular, vague, nor incomprehensible.

Mercy notes, however, that under the rules, AHCCCS can exclude "[a]ll services deemed non-emergency by the Administration," and argues AHCCCS could use its authority to exclude services for which the legislature has mandated coverage. *See* A.A.C. R9–22–217.B.2.a. Although Mercy is correct in asserting that AHCCCS may not expand or restrict a statute by fiat, *see Caldwell v. Arizona State Bd. of Dental Examiners,* 137 Ariz. 396, 398–99, 670 P.2d 1220, 1222–23 (App.1983), nothing in this record suggests that AHCCCS has exercised its rule-making authority in an impermissible manner.[6]

### III.

For the foregoing reasons, we reverse and remand to the trial court for proceedings consistent with this opinion.

---

**5.** AHCCCS defined "emergency medical services" as

> services provided after the sudden onset of a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in:
> a. Placing the patient's health in serious jeopardy;
> b. Serious impairment to bodily functions; or
> c. Serious dysfunction of any bodily organ or part.

A.A.C. R9–22–101.45.

**6.** Mercy requests that, if this court affirms the trial court's interpretation of A.R.S. section 36–2905.05, we consider whether denial of life-sustaining medical treatment to undocumented aliens violates equal protection. We will not resolve the equal protection issue because it is not "squarely presented in a justiciable controversy" and we need not resolve it to determine the merits of this case. *See School Dist. No. 26 v. Strohm,* 106 Ariz. 7, 9, 469 P.2d 826, 828 (1970) (citations omitted).

VOSS, J., and DANIEL E. NASTRO, J. Pro Tem.,* concur.