*271
 
 BARALL, J.
 

 The plaintiff has appealed the decision by the department of social services to deny him Title XIX emergency coverage to pay for outpatient dialysis treatment necessary to keep him alive.
 

 The plaintiff is a student from India who came to the United States under a student visa to attend the University of New Haven. At the time of entry, the plaintiff appeared to be in good health. About one year later, during a routine medical examination for high blood pressure, it was discovered that he had kidney disease, the exact etiology of which was unknown. On October 5,1992, the plaintiff developed acute symptoms of kidney failure or end stage renal disease including anemia, nausea, vomiting, severe hypertension and fluid retention. As a result of this symptomatology, he was hospitalized at Yale-New Haven Hospital for a Tankoff catheter placement and kidney dialysis and continued as an inpatient there until his discharge on November 28, 1992. The plaintiff continues to have dialysis through the Tankoff catheter on an outpatient basis. The original acute symptoms of his end stage renal disease have subsided, but only because of his daily dialysis. If the plaintiff were to stop dialysis, the acute symptoms of his end stage renal disease would quickly reappear and without that emergency therapy he would die within one to two weeks.
 

 The defendant paid for the plaintiffs entire costs of hospitalization pursuant to Title XIX (medicaid), but has refused to pay for the outpatient dialysis. Temporarily, that outpatient cost has been paid for by Yale-New Haven Hospital on a charitable basis pending the outcome of the present case.
 

 The plaintiff appeals the decision of the department. The appeal involves a decision of a hearing officer dated May 19, 1993, as well as a reconsideration decision dated December 10, 1993.
 

 
 *272
 
 The broad issue in the present case is whether the outpatient dialysis treatment comes within medicaid statutes, which provide that medical care and services furnished to aliens will be covered by medicaid if “necessary for the treatment of an emergency medical condition of the alien . . . .” 42 U.S.C. § 1396b (v) (2) (A).
 

 An examination of that portion of the medicaid statute that defines “emergency medical condition” reveals a much narrower claim by the defendant. An “emergency medical condition” is defined in 42 U.S.C. § 1396b (v) (3) as “a medical condition (including emergency labor and delivery) manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in — (A) placing the patient’s health in serious jeopardy, (B) serious impairment to bodily functions, or (C) serious dysfunction of any bodily organ or part.”
 

 The main thrust of the claim of the defendant, at this point, is that the plaintiffs medical condition is no longer an emergency because he is no longer suffering from acute symptoms.
 

 The court has used the word “seems” because there have been other positions of the department and the hearing officers that the court deems abandoned. A quick review of these is in order.
 

 First, in his decision, the first hearing officer used the following rationale for upholding the department’s position: “[the plaintiffs] emergency medical condition ceased as of his discharge from the hospital as his condition was no longer life threatening.”
 

 That position formed the basis of the request for reconsideration and that finding was deleted by the second hearing officer. Further, the state did not pursue that position of the first hearing officer in its brief and
 
 *273
 
 the court considers it abandoned. In any event, the medical condition of a client in a medicaid or medicare case is determined by the medical judgment of the medical doctor, not by administrative fiat. Particularly here, where it is undisputed that the plaintiffs medical condition of last stage renal disease is life threatening.
 
 Weaver
 
 v.
 
 Reagen,
 
 886 F.2d 194 (8th Cir. 1989);
 
 Marchetti
 
 v.
 
 Aronson,
 
 Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV900384199S (August 7, 1992) (7 Conn. L. Rptr. 203).
 

 Second, the department’s position that chronic disease can never form the basis for emergency medical care, as formulated in the second hearing, was disavowed at the time of the hearing by counsel for the defendant. In any event, that would be inconsistent with the state’s own evidence that medicaid is available where a chronic condition becomes an emergency. It would also be inconsistent with the language of the statute, which makes no distinction as to the etiology of the condition.
 

 The narrow issue in the present case is whether an alien who is entitled to medicaid payments for medical treatment loses that entitlement as soon as the acute symptoms that precipitated the medical treatment dissipate, even though the symptoms will quickly reoccur and will result in death in less than two weeks if that medical treatment is halted.
 

 The answer is no. The alien is still entitled to medicaid benefits. It is not disputed that the plaintiff began dialysis treatment after the onset of acute symptoms of sufficient severity that, in the absence of immediate medical attention (in this instance, dialysis), he would die in one to two weeks, and that the only reason these symptoms subsided is that he has continued to receive that immediate medical attention (dialysis), only in a different setting.
 

 
 *274
 
 The defendant argues that the agency interpretation of statutes and regulations is entitled to deference, even though the two original positions of the agency were acknowledged to be erroneous. As a general proposition that is true, provided, however, that their position is not inconsistent with the statutes or arbitrary and capricious.
 
 [1]
 
 The statute in the present case does not call for the medical “Russian roulette” that the agency position requires; i.e., stop the payment, wait a short time for symptoms to recur and then hope there is time to get the patient to the hospital to restart the treatment before the patient dies.
 

 A number of other jurisdictions have addressed the scope of Title XIX coverage provided for aliens needing renal dialysis. In
 
 Mercy Healthcare
 
 v.
 
 Arizona Health Care,
 
 181 Ariz. 95, 887 P.2d 625 (App. 1994), the plaintiff hospital brought an action against the Arizona health care cost containment system for reimbursement of emergency medical care to an undocumented alien after he no longer required acute care. In
 
 Mercy Healthcare,
 
 the state of Arizona limited the care available to undocumented aliens to those “ ‘[s]ervices . . . necessary to treat an emergency medical condition as defined in § 1903(v) of the social security act.’ A.R.S. § 36— 2905.05.”
 
 Mercy Healthcare
 
 v.
 
 Arizona Health Care,
 
 supra, 97. As in the present case, the parties in
 
 Mercy Healthcare
 
 disagreed over what constituted an “emergency medical condition” for the purposes of the statute. The court held that “the statute does not limit coverage to services for treatment while acute symptoms continue.” Id., 98-99. All that the statute requires is a medical condition manifesting itself by “ ‘an acute symptom (including severe pain).’ The statute then mandates that [the defendant] must cover services for treatment of that medical condition so long as absence
 
 *275
 
 of immediate treatment for that condition ‘could reasonably be expected to result in’ one of the three consequences defined by statute.” Id., 99.
 

 In
 
 Crespin
 
 v.
 
 Kizer,
 
 226 Cal. App. 3d 498, 276 Cal. Rptr. 571 (1990), the court addressed the state of California's approach to financing renal dialysis for aliens. Although
 
 Crespin
 
 involved the construction of a somewhat broader state statute; Cal. Welf. & Inst. Code § 14007.5 (Deering 1994); that statute created categories of eligibility that “[e]xcept in certain important respects . . . track those created by federal law . . . .”
 
 Crespin
 
 v.
 
 Kizer,
 
 supra, 505. Specifically, the statute covers nonemergency pregnancy related care. Id., 505-506. The court stated that the California department of health services “acknowledges that ‘in most cases renal dialysis does constitute “emergency” treatment’ for which federal financing participation is available under the Budget Act.” Id., 510.
 

 In
 
 Greenery Rehabilitation Group, Inc.
 
 v.
 
 Hammon,
 
 893 F. Sup. 1195, 1206 (N.D.N.Y. 1995), the United States District Court for the Northern District of New York was persuaded by the conclusions reached by the Arizona Court of Appeals in
 
 Mercy Healthcare,
 
 that it is unnecessary for the acute symptoms to continue.
 

 Accordingly, the appeal is sustained. The case is remanded for the defendant to take action consistent with this opinion.
 

 Given the potential for the plaintiffs death and the charitable nature of the gift of dialysis which can be terminated at any time, the action of this court is not stayed pending appeal, and payments under medicaid shall resume.
 

 [1]
 

 Even agency regulations that are inconsistent with the statutes they implement must fall.