45 P.3d 688

**SCOTTSDALE HEALTHCARE, INC., dba Scottsdale Healthcare–Osborn, Plaintiff–Appellee,**

v.

**ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM ADMINISTRATION, an agency of the State of Arizona; Phyllis Biedess, in her capacity as Director, Defendants–Appellants.**

No. 1 CA–CV 01–0226.

Court of Appeals of Arizona, Division 1, Department E.

May 7, 2002.

Gammage & Burnham, P.L.C. by Cameron C. Artigue, Susan L. Watchman, Aaron C. Schepler and Richard B. Burnham, Phoenix, Attorneys for Plaintiff–Appellee.

Johnston & Kelly, P.L.C. by Logan T. Johnston, Phoenix, Attorneys for Defendants–Appellants.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 Scottsdale Healthcare, Inc. dba Scottsdale Healthcare Osborn (Scottsdale Healthcare) seeks judicial review of an Arizona Health Care Cost Containment System (AHCCCS) decision denying a portion of claims for hospital services to an undocumented alien. AHCCCS appeals from the judgment in favor of Scottsdale Healthcare. The trial court concluded that certain medical services Scottsdale Healthcare provided patient J.N.[1] were "emergency" medical services and, therefore, AHCCCS was required to reimburse Scottsdale Healthcare for those services. For the reasons discussed, we disagree and reverse the judgment in favor of Scottsdale Healthcare.

1. Pursuant to a court order, the patient's initials are used to protect his confidentiality.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 J.N. was admitted to Scottsdale Healthcare on July 8, 1998, after he fell out of a palm tree, injured his head and neck, and was rendered partially quadriplegic. On July 22, 1998, J.N.'s condition having stabilized, he was transferred from the acute care unit to the hospital's rehabilitation unit. In the rehabilitation unit, J.N.'s care consisted mainly of assistance with activities of daily living. This care could have been provided on an outpatient basis. J.N. remained in the rehabilitation unit until August 12, 1998, when he was discharged from the hospital.

¶ 3 Because J.N. was an illegal or "undocumented" alien, he was eligible only for services "necessary to treat an emergency medical condition" under the AHCCCS program. Ariz.Rev.Stat. (A.R.S.) § 36–2905.05(A)(1993) (repealed 2001, current version at A.R.S. § 36–2901.06 (applicable to cases arising on October 1, 2001, and thereafter)).[2] AHCCCS paid Scottsdale Healthcare for the services J.N. received from July 8, 1998, through July 22, 1998, but refused to pay for any of his rehabilitation-related care from July 23, 1998, through August 12, 1998, on the basis that these services were not "emergency" services.

¶ 4 Scottsdale Healthcare filed a grievance with AHCCCS over the denial of these claims. The matter proceeded to a hearing before an administrative law judge. The administrative law judge subsequently recommended denial of the claim. The AHCCCS Director's designee adopted the recommended decision of the administrative law judge and denied the claim.

¶ 5 Scottsdale Healthcare then filed this suit for judicial review. Following briefing and oral argument, the trial court reversed AHCCCS's denial of the claim, finding there was "insufficient evidence to support the decision below" and that AHCCCS "erred in its interpretation of the law." The court entered judgment for Scottsdale Healthcare, awarding $17,985.45 in damages and $4,396

in attorneys' fees. AHCCCS timely filed this appeal.

## ISSUE

Did the trial court err in concluding that J.N.'s rehabilitation-related care was "necessary to treat an emergency medical condition," and in requiring AHCCCS to pay for that care?

## DISCUSSION

### I. Standard of Review

■ ¶ 6 The question before the court is whether AHCCCS correctly determined the scope of its duties under A.R.S. § 36–2905.05(A). We will reverse an agency's decision only if it is arbitrary, capricious, an abuse of discretion, or contrary to law. *Schade v. Arizona State Ret. Sys.*, 109 Ariz. 396, 398, 510 P.2d 42, 44 (1973). We will uphold an agency's findings of fact if supported by "substantial evidence." *Sigmen v. Arizona Dep't of Real Estate*, 169 Ariz. 383, 386, 819 P.2d 969, 972 (App.1991) (citation omitted). However, we owe the agency's conclusions of law no deference, and review those conclusions *de novo*. *Id.* (citation omitted).

### II. AHCCCS Properly Determined That J.N.'s Care Was Not Emergent On The Dates At Issue

■ ¶ 7 Undocumented aliens are eligible under AHCCCS *only* for emergency services. A.R.S. § 36–2905.05(A). The statute provides, in pertinent part, that undocumented aliens are "eligible for emergency services that are determined by [AHCCCS] as necessary to treat an emergency medical condition as defined in § 1903(v) of the social security act." A.R.S. § 36–2905.05(A). Section 1903(v) of the Social Security Act states:

"emergency medical condition" means a medical condition (including emergency labor and delivery) manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—

2. As J.N.'s case arose while A.R.S. § 36–2905.05 was still in effect and before the effective date of

A.R.S. § 36–2901.06, we analyze it under the former provision.

(A) placing the patient's health in serious jeopardy,

(B) serious impairment to bodily functions, or

(C) serious dysfunction of any bodily organ or part.

42 U.S.C. § 1396b(v)(3)(2001).

¶ 8 In *Greenery Rehabilitation Group, Inc. v. Hammon*, 150 F.3d 226, 232 (2d Cir.1998), the Second Circuit Court of Appeals held that section 1903(v) did not provide coverage for chronic conditions requiring continuous daily care following initial emergency treatment, such as the rehabilitation care needed by J.N. In *Greenery*, patients with head injuries from a car accident and a gunshot wound were left with "long-term debilitating conditions requiring ongoing care and daily attention." *Id.* at 228. The court found that these patients were no longer suffering emergency medical conditions after their initial injuries were treated and they were stabilized. *Id.* at 232–33. The court held that there was no coverage even though the patients' conditions upon admission had been "emergencies," and even though cessation of their ongoing care could have grave consequences for the patients. *Id.; see also Quiceno v. Dep't of Soc. Services*, 45 Conn.Supp. 580, 728 A.2d 553, 555 (1999) (following *Greenery* and holding that with respect to end-stage renal dialysis patient, the "fatal consequences of the discontinuance of such ongoing care does not transform [it] into emergency medical care.").

¶ 9 The *Greenery* court focused on the "immediate medical attention" language of the statute to conclude that the covered care was limited to the immediate care needed to treat the emergency condition and stabilize the patient. 150 F.3d at 232. The court cited Webster's Third New International Dictionary (1981) for the definitions of "acute" and "immediate":

An "acute" symptom is a symptom "characterized by sharpness or severity ... having a sudden onset, sharp rise, and short course ... [as] opposed to chronic." Moreover, as a verb, "manifest" means "to show plainly." In § 1396b(v)(3) this verb is used in the present progressive tense to explain that the "emergency medical condition" must be revealing itself through acute symptoms. Thus ... the statute plainly requires that the acute indications of injury or illness must coincide in time with the emergency medical condition. Finally, "immediate" medical care means medical care "occurring ... without loss of time" or that is "not secondary or remote." In sum, the statutory language unambiguously conveys the meaning that emergency medical conditions are sudden, severe and short-lived physical injuries or illnesses that require immediate treatment to prevent further harm.

*Id.* (citations omitted).[3] The court concluded that any care rendered after the patients were stabilized, while perhaps medically necessary, was not emergency care covered under the statute.[4] *Id.* We agree with this reasoning, and, in applying it to this case, conclude that while J.N. may have continued to need medical treatment after his transfer to the rehabilitation unit, he was not receiving emergency medical attention covered under A.R.S. § 36–2905.05(A).

¶ 10 Here, the determination regarding J.N.'s need for emergent care can be made from the record, and we conclude that AHCCCS properly denied coverage for J.N. after he was moved to the rehabilitation unit. The denied charges in this matter relate solely to services rendered *after* J.N. was transferred from the acute care unit to the rehabilitation unit. J.N.'s treating physician in the rehabilitation unit was Dr. John Kelley, who is a specialist in physical rehabilitation medicine, not emergency medicine.

**3.** We also note the dictionary definition of "emergency": "a state of things unexpectedly arising, and urgently demanding immediate action." 5 The *Oxford English Dictionary* 176 (J.A. Simpson & E.S.C. Weiner eds., 2d ed. 1989).

**4.** The court recognized that a patient transferred into long-term care might suffer an additional emergency medical condition, such as a sudden

heart attack, that would be covered by Medicaid under the statute. *Greenery*, 150 F.3d at 232–33. However, such an "occurrence would constitute an independent emergency and would not be considered a continuation of the emergency situation brought about by the initial ... injury." *Id.* at 233.

While Dr. Kelley did not think J.N. was ready to be discharged home on July 22nd, he recognized that J.N.'s initial emergent condition had stabilized by the time of his transfer to the rehabilitation unit. In rehabilitation, J.N. received physical and occupational therapy and some nursing care, including a daily check of his vital signs and assistance with dressing and hygiene. While these services may have been medically necessary, they were not the type of immediate medical treatment for an emergency condition that AHCCCS is required to cover under A.R.S. § 36–2905.05(A).[5]

¶ 11 Scottsdale Healthcare asserts that *Greenery* offers no guidance as it interprets federal law, not state law. However, the federal statute it interprets is the identical statute that our legislature uses as its standard in A.R.S. § 36–2905.05, i.e., § 1903 of the Social Security Act (42 U.S.C. § 1396b(v)(3)).

¶ 12 Scottsdale Healthcare relies on *Mercy Healthcare Arizona, Inc. v. Arizona Health Care Cost Containment System*, 181 Ariz. 95, 887 P.2d 625 (App.1994). In *Mercy*, we held that AHCCCS must cover services for treatment so long as the absence of immediate treatment for a medical condition manifested by an acute symptom could reasonably be expected to result in a) placing the patient's health in serious jeopardy, b) serious impairment to bodily functions, or c) serious dysfunction of any bodily organ or part. 181 Ariz. at 98–99, 887 P.2d at 628–29.

¶ 13 In *Mercy*, a factual dispute existed as to when the patient no longer required immediate medical attention. *Id.* at 99, 887 P.2d at 629. The patient in *Mercy* had a gastrointestinal tube for feeding and a tracheostomy at the time he was transferred from the hospital to a skilled nursing facility. *Id.* at 97, 887 P.2d at 627. In this case, on the other hand, J.N. was medically stable when he was transferred to the rehabilitation unit, and he received primarily rehabilitation services at the unit.

¶ 14 These coverage claims must be decided on a case-by-case basis, and we will not make sweeping pronouncements about the type of services or facilities qualifying for such AHCCCS "emergency" coverage. Yet, in this case, the evidence supported AHCCCS's decision that J.N.'s condition had stabilized and ceased to be an emergency by the time of his transfer to the rehabilitation unit. While the rehabilitation services may have been medically necessary, they were not emergency services as defined by the relevant statutes and the cases interpreting them. Our opinion in *Mercy* notwithstanding, in order to be entitled to coverage under A.R.S. § 36–2905.05, a patient must be suffering from an emergency as manifested by an acute symptom.

## CONCLUSION

¶ 15 The evidence at the hearing supported AHCCCS's denial of the claims for J.N.'s care, and, therefore, AHCCCS's decision was not arbitrary, capricious, or an abuse of discretion. AHCCCS's denial of the claims was also supported by the relevant statutes and case law. Accordingly, we reverse the judgment of the superior court in favor of Scottsdale Healthcare, including its award of attorneys' fees.

CONCURRING: JEFFERSON L. LANKFORD and DANIEL A. BARKER, Judges.

---

5. AHCCCS's determination that the rehabilitation care provided to J.N. was not covered emergency care was buttressed by the assessment by AHCCCS's independent medical advisor, the Health Services Advisory Group, which concluded that J.N.'s rehabilitation did not meet the emergency services criteria. AHCCCS's decision was also supported by the testimony of Linda Kramer, AHCCCS's service utilization management administrator, who testified that on July 22, 1998, J.N. was stable and could have been discharged to his home.