NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JUDSON C. BALL REVOCABLE TRUST,
*Plaintiff/Counter-Defendant/Cross-Defendant/Appellant,*

*v.*

PHOENIX ORCHARD GROUP I, LP, et al.,
*Defendant/Counter-Claimant/Appellee,*

PJI-2 COLLECTION LLC,
*Defendant/Counter-Defendant/Cross-Claimant/Appellee.*

No. 1 CA-CV 16-0557
FILED 1-4-2018

Appeal from the Superior Court in Maricopa County
No. CV2015-011768
The Honorable Dawn M. Bergin, Judge

**AFFIRMED IN PART; JURISDICTION ACCEPTED, RELIEF DENIED**

COUNSEL

Hovore Law, PLLC, Scottsdale
By F. Thomas Hovore
*Counsel for Plaintiff/Counter-Defendant/Cross-Defendant/Appellant*

Freeman Law PLLC, Scottsdale
By Shelton L. Freeman, Jason M. Venditti
*Counsel for Defendant/Counter-Claimant/Appellee*

Gallagher & Kennedy, P.A., Phoenix
By John P. Flynn, Hannah H. Porter
*Counsel for Defendant/Counter-Defendant/Cross-Claimant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1**　　　　Judson C. Ball Revocable Trust (the "Trust") appeals from the declaratory judgment in favor of Phoenix Orchard Group I, LP and Phoenix Orchard Group II, LP (collectively, "POG"); and the denial of its motion to stay release of rescission payments to the Trust's judgment creditor, PJI-2 Collection, LLC ("PJI-2"). For the following reasons, we affirm the declaratory judgment and accept jurisdiction, but deny relief from the denial of the Trust's motion to stay.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　In October 2015, the Trust brought this action pursuant to the Arizona Securities Act, alleging two counts of securities fraud against POG and others in connection with the Trust's investment in citrus orchards in California's San Joaquin Valley.[1] In its complaint, the Trust, which still owned the securities it purchased, demanded damages or rescission. As a part of the Trust's claim for rescission it tendered the securities to POG.[2]

---

[1]　　The Trust also alleged a common-law fraud claim, which is not the subject of this appeal.

[2]　　In its complaint, the Trust made the following explicit tender and demand for rescission:

> Plaintiff tenders to Defendants all consideration [with] . . . the securities and offers to do any other acts necessary for rescission under the common law or A.R.S. § 44-2001(A). In return, Plaintiff demands rescission with interest and attorney fees as provided in A.R.S. § 44-2001(A).

2

POG accepted the Trust's tender, and counterclaimed for a declaratory judgment that acceptance of the tender created a valid, mutually binding rescission obligation, and that a charging order[3] be entered against the Trust in an unrelated case (the "Charging Order") that any rescission payments owed to the Trust be paid to PJI-2.[4]

**¶3**      The superior court granted POG's application for declaratory relief, ruling that rescission is the sole remedy available to a purchaser who still owns securities and is suing under A.R.S. § 44-2001(A) (2013). On this basis, the court ordered POG to deposit with the clerk of the court the consideration paid by the Trust for the securities (plus interest, costs, and reasonable attorneys' fees). On May 16, 2016, POG deposited with the clerk rescission payments totaling $776,725.68.

**¶4**      In granting POG's application for declaratory relief, the court also found the rescission payments could be released to PJI-2 pursuant to the Charging Order. The Trust did not challenge PJI-2's rights as a judgment creditor or the enforceability of the Charging Order, but it moved to stay release of the payments to PJI-2 pending the Trust's "intended appeal" from the underlying ruling. The superior court denied the Trust's request to stay enforcement of the Charging Order, finding that the Trust's request was "extraordinary" because the court "may, in the future, enter a Rule 54(b) final judgment that [the Trust] would appeal[,]" and if overturned on appeal, "PJI-2 will be legally obligated to return the funds."

**¶5**      Accordingly, the superior court ordered the clerk of the court to release the rescission payments to PJI-2 consistent with the Charging Order.

**¶6**      In the meantime, the Trust moved for entry of a final judgment pursuant to Arizona Rule of Civil Procedure 54(b) regarding the superior court's grant of rescission for Counts One and Two. The court

---

[3]    A charging order allows a judgment creditor to charge a judgment debtor's membership interest in a limited liability company to the extent of the unsatisfied amount of the judgment plus interest. Ariz. Rev. Stat. ("A.R.S.") section 29-655(A) (2014).

[4]    PJI-2 cross-claimed against the Trust seeking a declaratory judgment to the same effect with respect to the Charging Order.

granted the motion as to Count One, and entered a final judgment in favor of POG "on the First Claim for Relief in [its] Counterclaim: Declaratory Judgment—Acceptance of Tender and Demand for Rescission." The Trust timely appealed from (1) the August 19, 2016 final judgment (the "August Judgment") and (2) "the Court's issuance of the funds to a third party that were lodged with the Clerk for the benefit of the Trust."[5]

## ANALYSIS

### I.     The August Judgment

¶7        We have jurisdiction of the Trust's appeal from the August Judgment pursuant to A.R.S. § 12-2101(A)(1) (2016). *See Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 426, ¶ 4 (App. 2016).

### A.     The Plain Language of A.R.S. § 44-2001

¶8        The Trust argues A.R.S. § 44-2001 does not limit a purchaser's remedy to rescission, but allows a purchaser to seek rescission *and* damages, and to defer any election of remedies until the time of trial. We review questions of statutory interpretation *de novo. E. Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 206 Ariz. 399, 406, ¶ 19 (App. 2003). When interpreting a statute, we give "words their ordinary meaning unless the context of the statute requires otherwise." *Hirsch v. Ariz. Corp. Comm'n*, 237 Ariz. 456, 466, ¶ 38 (App. 2015) (citing *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co., Inc.*, 177 Ariz. 526, 529 (1994)). *See also Mercy Healthcare Ariz., Inc. v. Ariz. Health Care Cost Containment Sys.*, 181 Ariz. 95, 98 (App. 1994) ("We look primarily to the language of the statute and give effect to the terms according to their commonly accepted meaning.").

¶9        Our goal in "interpreting a statute is to give effect to the legislature's intent." *Blevins v. Gov't Emps. Ins. Co.*, 227 Ariz. 456, 459, ¶ 13 (App. 2011) (citing *Blum v. State*, 171 Ariz. 201, 205 (App. 1992)). "When the language of a statute is clear and unambiguous, a court should not look beyond the language." *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 360, ¶ 8 (2008). Although the Arizona Securities Act is a "remedial

---

[5]       The final judgment included an award to the Trust of $47,532 in attorneys' fees and costs. POG deposited this amount with the clerk of the court after the Trust filed its notice of appeal; thereafter, PJI-2 filed a request for distribution of the award pursuant to the Charging Order. The Trust objected, arguing the superior court was divested of jurisdiction over these funds. The court granted PJI-2's request, and released the remaining judgment amount of $36,343.35.

measure for the protection of the public[,]" it may be liberally construed only if a provision's language is ambiguous. *Sell v. Gama*, 231 Ariz. 323, 325, ¶ 8 (2013) (quoting 1951 Ariz. Sess. Laws, ch. 18, § 20 (1st Reg. Sess.)). *See also Caruthers v. Underhill*, 235 Ariz. 1, 10, ¶ 38 (App. 2014) (discussing A.R.S. § 44-2002). Section 44-2001(A) is not ambiguous, thus, we construe it according to its ordinary meaning.

¶10 Section 44-2001(A) provides:

> A sale or contract for sale of any securities to any purchaser in violation of § 44-1841 or 44-1842 or [§§ 44-1991 through 2000] is voidable at the election of the purchaser, and *the purchaser may bring an action in a court of competent jurisdiction to recover the consideration paid for the securities*, with interest, taxable court costs and reasonable attorney fees, less the amount of any income received by dividend or otherwise from ownership of the securities, on tender of the securities purchased or the contract made, *or for damages if the purchaser no longer owns the securities.*

A.R.S. § 44-2001(A) (emphasis added.)

¶11 The language of A.R.S. § 44-2001 is clear—a purchaser of securities must seek rescission if it owns the securities, but, if it does not, it may seek damages. *See Bullard v. Garvin*, 1 Ariz. App. 249, 251 (1965) (finding that if A.R.S. § 44-2001 were to be construed to "permit a purchaser of securities sold in violation of the Act to sell the securities and still sue for damages . . . [it would] negate the supposed purpose of the legislature in requiring a strict tender").

### B. Legislative History

¶12 This court generally does not review or refer to legislative history if the language of the subject statute is clear; however, we do so here only to address the issues raised by the Trust. The Trust suggests that, by not interpreting A.R.S. § 44-2001(A) to allow rescission and/or damages, the superior court essentially permitted POG to "buy" its way out of a securities fraud claim. Specifically, the Trust urges that we interpret A.R.S. § 44-2001(A) more liberally to provide a defrauded purchaser or a purchaser of unregistered securities, the same opportunity to seek

rescission and/or damages as provided to a defrauded seller under A.R.S. § 44-2002(A).[6]

¶13       The Trust acknowledges that while A.R.S. § 44-2002(A) expressly grants a seller the right to sue for damages, A.R.S. § 44-2001(A) does not contain the same express grant to the purchaser. The Trust, however, suggests the Arizona Securities Act drafters intended the same remedies for sellers be applied to purchasers. This contention is not supported by the legislative history.

¶14       The legislature has amended both statutes twice since original enactment, but not in ways material to this issue. *See* 1993 Ariz. Sess. Laws, ch. 257, § 5 (1st Reg. Sess.); 2000 Ariz. Sess. Laws, ch. 108, §§ 41-42 (2d Reg. Sess.). This creates a "strong inference" the legislature did not intend to incorporate the seller's damages remedy under A.R.S. § 44-2002(A) into the purchaser's damages remedy under A.R.S. § 44-2001(A). *See Cemex Constr. Materials S., LLC v. Falcone Bros. & Assocs., Inc.*, 237 Ariz. 236, 241, ¶ 18 (App. 2015). Accordingly, we will not read into A.R.S. § 44-2001(A) what the legislature has omitted or excluded. *See Stambaugh v. Killian*, 242 Ariz. 508, 511, ¶ 15 (2017) (citing *City of Flagstaff v. Mangum*, 164 Ariz. 395, 398 (1990) (quotations omitted)).

### C.    *Case Law*

¶15       The Trust contends Arizona case law supports its argument that A.R.S. § 44-2001 allows a purchaser to seek both rescission *and* damages. In large part, the authorities relied on by the Trust address the remedies available to (1) purchasers who sold their securities before filing for relief; (2) purchasers who, like the Trust, assert other distinct causes of

---

6      Section 44-2002(A) (2013) provides:

> A purchase or contract for purchase from a seller of securities made in violation of section 44-1842, 44-1991 or 44-1994 is voidable at the election of the seller of the securities, *and* the seller may bring an action in a court of competent jurisdiction to recover the amount of the seller's damages, with interest, taxable court costs and reasonable attorney fees.

A.R.S. § 44-2002(A) (emphasis added.)

action; or (3) sellers. For example, the Trust cites *Wash. Nat'l Corp. v. Thomas* to support its argument that the court should not limit its remedy to rescission, if rescission cannot make the Trust whole. 117 Ariz. 95 (App. 1977), *disapproved on other grounds, Greenfield v. Cheek*, 122 Ariz. 57 (1979). The Trust's reliance on *Wash. Nat'l Corp.* is misplaced. *Wash. Nat'l Corp.* addressed the recovery of damages sought by a seller of stock, under A.R.S. § 44-2002. *Id.* at 103. As mentioned above, there are significant differences between A.R.S. § 44-2001 and § 44-2002, which demonstrate that the legislature did not intend for the same remedies to apply to both statutes.[7]

**¶16** The Trust also argues that case law supports its interpretation that A.R.S. § 44-2001 does not "limit a defrauded buyer to rescission when the buyer still owns the securities." In this regard, the Trust relies primarily on *Grand v. Nacchio*, 214 Ariz. 9 (App. 2006). *Grand* involved a situation where the purchaser sold the subject shares before instituting the securities fraud action, and argued it could establish a right to rescind the original transaction if it replaced the shares it originally owned with "substitute" shares. *Id.* at 13, ¶ 2. These facts, clearly, are not the facts of the instant appeal. In allowing the purchaser to rescind, the *Grand* court interpreted § 44-2001(A) to "permit[] a plaintiff to elect a remedy rather than [] prescrib[e] the remedy." *Id.* at 22, ¶ 42. *Grand*, however, does not stand for the proposition that a purchaser who still owns the shares can assert a right to rescission and successfully tender the shares while simultaneously asserting a statutory claim for damages.[8] Neither does *Grand* modify the underlying directive of A.R.S. § 44-2001—that rescission is the appropriate remedy if a purchaser still owns the securities.[9] *Grand*, 214 Ariz. at 22, ¶ 42. *Grand* merely gives a plaintiff who has previously sold the subject securities

---

[7] It is undisputed that a seller under A.R.S. § 44-2002 may also seek damages.

[8] The superior court's ruling in this regard does not affect the Trust's ability to seek damages arising out of its common law misrepresentation and non-disclosure claims, which remain pending in superior court.

[9] *Grand* explicitly recognized that rescission is a proper remedy if a purchaser of securities still owns the securities. *Id.* at 24, ¶ 48. *See also Randall v. Loftsgaarden*, 478 U.S. 647, 655 (1986) (finding under federal securities law, the remedy of rescission is prescribed "except where the plaintiff no longer owns the security" (citing *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1035 (2d Cir. 1979))).

the opportunity to purchase substitute securities prior to trial, and thereby qualify to seek rescission.

¶17        Here, the Trust in its complaint explicitly elected and demanded rescission, triggering POG's right to accept the tender.  POG accepted the tender and completed the rescission process as provided by the statute.  Under these facts, we need not address the hypothetical issue of whether a purchaser can both demand rescission and tender the subject shares and, for tactical reasons, reserve its right to later seek an alternative damages remedy.[10]

### D.        Punitive Damages

¶18        Finally, the Trust contends the superior court "impermissibly abrogated" its right to recover punitive damages.  We disagree.  The Trust urges that *Hall v. Sec. Planning Servs., Inc.*, allows an award of punitive damages under A.R.S. § 44-2001(A).  419 F. Supp. 405 (D. Ariz. 1976).  It does not.  In *Hall*, the district court concluded the defendants' actions violated the Arizona Securities Act *and* constituted common law fraud, and it was the defendants' "knowing and willful fraud" that allowed for punitive damages.  *Id.* at 408.  Although the Arizona Securities Act's "remedy provisions do not limit 'any statutory or common law right of any person in any court for any act involved in the sale of securities,'" they do not allow us to "superimpose" a common law claim for punitive damages on A.R.S. § 44-2001(A).  *Sell*, 231 Ariz. at 329, ¶ 26 (quoting A.R.S. § 44-2005).  *See also Jones v. CPR Div., Upjohn Co.*, 120 Ariz. 147, 153 (App. 1978) (finding the remedy for a violation of A.R.S. § 44-2001(A) is "nonexclusive and an action may be maintained for common law fraud as well as statutory securities violation").

¶19        Accordingly, we agree with the superior court that POG's acceptance of the Trust's unequivocal tender created a valid and mutual rescission obligation, and the Trust is not entitled to seek punitive damages on its statutory securities fraud claims.

---

[10]        Even assuming such a delayed election might be permitted in some cases, we note such attempt may in certain circumstances be inappropriate; for example, if the purchaser "delayed in electing the remedy of rescission to see if avoidance or affirmance would be more profitable."  *Rose v. Dobras*, 128 Ariz. 209, 214 (App. 1981).

### II. Release of Rescission Payments

**¶20** The Trust argues the superior court erred by releasing the rescission payments to PJI-2 before the Trust appealed from the August Judgment. We construe this argument as a challenge to the denial of the Trust's motion to stay, which is more properly raised by special action. *See Astorga v. Wing*, 211 Ariz. 139, 142, ¶ 14 (App. 2005)*; Grand*, 214 Ariz. at 17, ¶ 20. *See also* A.R.S. § 12-120.21(A)(4) (stating this court may hear petitions for special action "without regard to its appellate jurisdiction"). In the exercise of our discretion, we consider the Trust's appeal of this issue as a special action.

**¶21** Because we affirm the August Judgment on the merits, the question of whether the superior court frustrated the appeal process is moot. *See Contempo-Tempe Mobile Home Owners Ass'n v. Steinert*, 144 Ariz. 227, 229 (App. 1985) ("A case is moot when it seeks to determine an abstract question which does not arise upon existing facts or rights." (citing *Freeman v. Wintroath Pumps-Div. of Worthington Corp.*, 13 Ariz. App. 182, 183 (1970))); *J.R. Francis Constr. Co. v. Pima Cty.*, 1 Ariz. App. 429, 430 (1965). Accordingly, we deny relief. *Cf. Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 510 n.6, ¶ 23 (App. 2011) (deeming a cross-appeal moot when affirming judgment for reasons underlying the superior court's ruling); *Catalina Foothills Unified Sch. Dist. No. 16 v. La Paloma Prop. Owners Ass'n, Inc.*, 238 Ariz. 510, 519 n.8, ¶ 37 (App. 2015) (declining to address issues raised by cross-appeal when affirming judgment on a jury's verdict).

## CONCLUSION

**¶22** For the foregoing reasons, we affirm the August Judgment and accept jurisdiction of, but deny relief from, the denial of the Trust's motion to stay. POG requests an award of attorneys' fees on appeal pursuant to A.R.S. § 12-341.01 (2016). We defer this request to the superior court pending final resolution of the case. *See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 204, ¶ 37 (App. 2007). As the successful parties, POG and PJI-2 upon compliance with ARCAP 21 are entitled to their costs on appeal.