IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

DYANE CORBETT, Personal                )
Representative of the Estate of DORIS  )
LOUCKS,                                )
                                       )
        Plaintiff/Appellant/           )
           Cross-Appellee,             )
                                       )
        v.                             )        2 CA-CV 2005-0160
                                       )        DEPARTMENT A
MANORCARE OF AMERICA, INC.;            )
MANORCARE HEALTH SERVICES,             )        O P I N I O N
INC.; and MANORCARE OF ARIZONA,        )
INC., a Delaware corporation with its  )
principal place of business in Ohio, dba )
MANOR CARE HEALTH SERVICES-            )
TUCSON fka HCR MANOR CARE,             )
INC.; MANORCARE HEALTH                 )
SERVICES OF ARIZONA, INC.;             )
NETTIE ELIE and JOHN DOE ELIE, a       )
married couple; RICHARD PARK and       )
JANE DOE PARK; PAUL ORMOND             )
and JANE DOE ORMOND, a married         )
couple; MICHAEL MARTINEZ and           )
JANE DOE MARTINEZ, a married           )
couple; RICK PAREDES and JANE          )
DOE PAREDES, a married couple; and     )
KEITH WEIKEL and JANE DOE              )
WEIKEL, a married couple,              )
                                       )
        Defendants/Appellees/          )
           Cross-Appellants.           )
                                       )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20043303

Honorable Michael D. Alfred, Judge

Lisa Kimmel                                                                     Tucson
                                                          Attorney for Plaintiff/
                                                     Appellant/Cross-Appellee

Gust Rosenfeld, P.L.C.
  By James W. Kaucher                                                           Tucson
                                                     Attorneys for Defendants/
                                                   Appellees/Cross-Appellants

V Á S Q U E Z, Judge.


**¶1**        Appellant Dyane Corbett, personal representative of the Estate of Doris Loucks, appeals from the trial court's grant of summary judgment to Manor Care of America, Inc.; Manor Care Health Services, Inc.; Manor Care of Arizona, Inc. (all corporate subsidiaries of Manor Care, Inc.); and several employees of Manor Care, Inc. and its subsidiaries. Corbett also appeals from the trial court's dismissal of her complaint against employee Richard Park and the court's award of attorney fees to the subsidiaries and the employees. The subsidiaries and employees cross-appeal from the trial court's denial of their motion for sanctions. We affirm in part and reverse in part the summary judgment and affirm the dismissal of Corbett's claim against Park. We vacate the attorney fee award and affirm the denial of sanctions.

## Standard of Review

**¶2**        We review a trial court's grant of summary judgment de novo. *Andrews v. Blake*, 205 Ariz. 236, ¶ 12, 60 P.3d 7, 11 (2003). We will affirm a summary judgment only

2

if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* ¶ 13. "[W]e view the facts 'in the light most favorable to the party against whom judgment was entered.'" *Ariz. Prop. & Cas. Ins. Guar. Fund v. Martin*, 210 Ariz. 478, ¶ 2, 113 P.3d 701, 701-02 (App. 2005), *quoting Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, ¶ 2, 965 P.2d 47, 49 (App. 1998). We review for an abuse of discretion a trial court's decision on a motion to dismiss a complaint for failure to timely serve a defendant. *Toy v. Katz*, 192 Ariz. 73, 83, 961 P.2d 1021, 1031 (App. 1997).

## Facts and Procedural Background

¶3        This appeal is from the second of two lawsuits Corbett filed on behalf of the estate of her mother, Doris Loucks, arising from the treatment provided Loucks in a Tucson Manor Care facility in April 2001.

*Corbett I*

¶4        Corbett filed her first complaint in 2002 in Pima County Superior Court against Manor Care, Inc., alleging violations of Arizona's Adult Protective Services Act (APSA), A.R.S. §§ 46-451 through 46-457, as well as claims of negligence, breach of contract, and fraud. Manor Care removed the case to federal district court in May 2002. Corbett learned during discovery that Manor Care, Inc. was the parent company of several subsidiaries. She amended her complaint pursuant to the parties' stipulation in May 2003 to include the subsidiaries. The subsidiaries moved to dismiss the complaint in February 2004, alleging Corbett had not timely served them. The district court granted the motion in April 2004 and dismissed the subsidiaries without prejudice.

**¶5**        Corbett then moved for leave to amend her complaint to include the subsidiaries. The district court denied the motion in May 2004 after finding the amendment would be futile because Corbett's personal injury and APSA claims were then barred by the statutes of limitations, a ground the court raised sua sponte. The district court denied Corbett's motion for reconsideration of that ruling. In September 2004, the court granted summary judgment in favor of the parent company, Manor Care, Inc., the only remaining defendant, after finding, inter alia, that Corbett had "pursued the incorrect defendant" by suing the parent company instead of the subsidiaries on her APSA claim. Corbett timely appealed that ruling to the Ninth Circuit Court of Appeals.[1]

*Corbett II*

**¶6**        In June 2004, while the district court case was pending, Corbett filed the present case in Pima County Superior Court against the subsidiaries and the employees, alleging APSA violations, breach of contract, and negligence. The subsidiaries and employees moved for summary judgment. The subsidiaries asserted that Corbett was barred under the doctrine of res judicata from pursuing her claims because of the district court's grant of summary judgment in favor of Manor Care, Inc. in *Corbett I* and also that Corbett was estopped from bringing her claims because of the district court's rulings regarding her motion to amend her complaint. The employees argued that the doctrines of res judicata and collateral estoppel barred Corbett from pursuing her claims because of the district court's rulings regarding her motion to amend her complaint. The employees also asserted that the

---

[1]Corbett's appeal is pending.

statute of limitations had run on Corbett's negligence and breach of contract claims and that her APSA claim was baseless because they had not been "employed to provide care" to Loucks.

¶7    The trial court granted summary judgment in favor of the subsidiaries and employees, finding that Corbett's claims against the subsidiaries were barred by res judicata and collateral estoppel, that her claims against the employees were barred by collateral estoppel, and that her claims against the employees for negligence, breach of contract, and the APSA violation were barred by the statutes of limitations. The trial court further found that the employees were not liable as a matter of law on Corbett's APSA claim because they "were not 'employed to provide care'" to Loucks under the statute. The court also granted employee Richard Park's motion to dismiss the complaint without prejudice after finding he had not been timely served.

## Discussion

**Dismissal of Park**

¶8    Corbett argues the trial court abused its discretion in granting Park's motion to dismiss on the ground she had failed to timely serve him. Corbett contended below that she had served the complaint in July 2004 on a Manor Care, Inc. employee, believing that the employee was authorized to accept service for all the employees who had not yet been served, including Park. In his affidavit submitted in support of his motion to dismiss, however, Park stated that he had not been employed by Manor Care, Inc. or "any Manor Care entity" in July 2004 and that he had not authorized Manor Care, Inc. to accept service

5

on his behalf. Park therefore argued that he had not been timely served and the claim against him should be dismissed pursuant to Rule 4(i), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, which provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

**¶9** Corbett now argues that the trial court erred in dismissing Park under this rule because she did not have "prior notice" that Park had not been served. She contends the trial court should have afforded her an opportunity to correct the deficiency. But Corbett cites no authority for the proposition that she was entitled to notice that Park had not been properly served before he filed his motion, and we are aware of none. And Rule 4(i), on its face, warranted the trial court's dismissal without prejudice of Corbett's complaint against Park. We therefore find no abuse of discretion in that ruling. *See Toy v. Katz*, 192 Ariz. 73, 83, 961 P.2d 1021, 1031 (App. 1997).

**Summary judgment rulings**

**¶10** The party moving for summary judgment has the burden of showing there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Schwab v. Ames Constr.*, 207 Ariz. 56, ¶ 15, 83 P.3d 56, 60 (App. 2004). We will uphold a grant of summary judgment if it is correct for any reason. *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 198 Ariz. 173, ¶ 19, 7 P.3d 979, 984 (App. 2000). We review issues

6

of law, such as those involving res judicata, collateral estoppel, and statutory interpretation, de novo. *Hall v. Lalli*, 194 Ariz. 54, ¶ 5, 977 P.2d 776, 779 (1999) (res judicata); *Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, ¶ 8, 62 P.3d 966, 968 (App. 2003) (collateral estoppel); *Mercy Healthcare Ariz., Inc. v. Ariz. Health Care Cost Containment Sys.*, 181 Ariz. 95, 98, 887 P.2d 625, 628 (App. 1994) (statutory interpretation).

¶11 We first note Corbett does not argue on appeal concerning the summary judgment on her breach of contract claim against the employees, which the trial court found was barred by the statute of limitations. The employees correctly assert that she has therefore waived any issue on that claim, and we do not address it. *See Rowland v. Great States Ins. Co.*, 199 Ariz. 577, n.1, 20 P.3d 1158, 1169 n.1 (App. 2001). Similarly, although the trial court granted summary judgment in favor of the employees on Corbett's common law negligence claim, also on statute of limitations grounds, Corbett's arguments on appeal refer only to her statutory negligence claim under APSA and not to any other negligence claim. Therefore, we do not address her common law negligence claim. *See id*.

A. Subsidiaries

¶12 Corbett first argues the trial court erred in finding that her APSA claim against the subsidiaries is barred on res judicata and collateral estoppel grounds based on the district court's rulings in *Corbett I*. Because the district court rendered the prior rulings that gave rise to those defenses, federal law governs whether those rulings have a preclusive effect. *In re Gila River Sys. Water Rights*, 212 Ariz. 64, ¶ 13, 127 P.3d 882, 887 (2006); *Garcia*

7

*v. Gen. Motors Corp.*, 195 Ariz. 510, ¶ 7, 990 P.2d 1069, 1072-73 (App. 1999). We note, however, the result is the same under either federal or Arizona law.

1. Res judicata

**¶13** "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979); *Di Orio v. City of Scottsdale*, 2 Ariz. App. 329, 331, 408 P.2d 849, 851 (1965). Corbett contends her claim is not precluded by res judicata because *Corbett I* and *Corbett II* did not involve the same parties. The subsidiaries contend *Corbett II* "meets the criteria for res judicata . . . [because it] is the same suit, based on the same facts, with the same plaintiff" as *Corbett I*, in which the district court granted summary judgment in favor of Manor Care, Inc. The subsidiaries further contend they were parties to *Corbett I*.

**¶14** Corbett initially amended her complaint in *Corbett I* following her stipulation with Manor Care, Inc. to join the subsidiaries as defendants. However, the district court granted the subsidiaries' motion to dismiss the case against them without prejudice on the ground that they had not been timely served. And the district court denied Corbett's subsequent motion to amend her complaint to again join the subsidiaries as defendants, as well as her motion for reconsideration of that ruling. Thus, even though the subsidiaries had been joined as defendants, they ceased to be parties to *Corbett I* once they were dismissed and never again became parties because the court denied Corbett's motions.

8

¶15 When the district court granted summary judgment in *Corbett I*, the only parties to the action were Manor Care, Inc. and Corbett. The district court found Manor Care, Inc. was not a proper defendant under APSA and Corbett should have sued the subsidiaries instead. But, because the subsidiaries have not shown that *Corbett I* and *Corbett II* involved the same parties or their privies,[2] res judicata does not bar Corbett's claim against the subsidiaries in *Corbett II*.

2. Collateral estoppel

¶16 "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits." *Montana*, 440 U.S. at 153, 99 S. Ct. at 973. Collateral estoppel applies when the issue sought to be precluded is the same as that involved in the prior proceeding, the issue was actually litigated in the prior proceeding, the issue was determined by a valid and final judgment on the merits, and the determination was essential to the final judgment. *In re Giangrasso*, 145 B.R. 319, 322 (B.A.P. 9th Cir. 1992); *Garcia*, 195 Ariz. 510, ¶ 9, 990 P.2d at 1073 (noting state elements of collateral estoppel virtually identical to federal).

¶17 The subsidiaries argue Corbett is estopped from litigating in *Corbett II* the issue of whether her APSA claim is timely because the district court denied Corbett's motion to amend the complaint and her motion for reconsideration in *Corbett I* on statute of limitations grounds. They contend these district court rulings constitute a valid and final judgment on the merits for purposes of collateral estoppel. In contrast, Corbett argues that

---

[2]The subsidiaries do not assert they are privies of Manor Care, Inc.

"[t]he underlying merits of this case have never been adjudicated." Assuming, without deciding, that rulings based on statute of limitations grounds are to be given issue-preclusive effect,[3] we agree with Corbett's alternate argument that collateral estoppel cannot apply because the statute of limitations issue was not fully and "actually litigated."[4]

**¶18**        For collateral estoppel to bar a party from litigating an issue, the issue must have been actually litigated. *Giangrasso*, 145 B.R. at 322; *Garcia*, 195 Ariz. 510, ¶ 9, 990 P.2d at 1073. This requirement means that preclusion is inappropriate if the parties did not raise the issue in the pleadings, *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003), and thus, did not have "a full and fair opportunity to litigate the merits of an issue," *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003). *See also Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana*, 440 U.S. at 164 n.11, 99 S. Ct. at 979 n.11; *see also State ex rel. Dep't of Econ. Sec. v. Powers*, 184 Ariz. 235, 237, 908 P.2d 49, 51 (App. 1995).

---

[3]*Compare Martin v. United States*, 30 Fed. Cl. 542, 549 (1994) (finding elements of issue preclusion had been met, including necessity of "judgment on the merits," when action dismissed on statute of limitations grounds), *with Cepeda v. Coughlin*, 785 F. Supp. 385, 388-89 (S.D.N.Y. 1992) (concluding that, although statute of limitations dismissals have claim-preclusive effect in New York, they do not have issue-preclusive effect).

[4]Corbett did not make this argument in her response to the subsidiaries' motion for summary judgment. However, she did argue it in her motion to vacate the judgment pursuant to Rule 59(a), Ariz. R. Civ. P., 16 A.R.S., Pt. 2. Thus, she preserved this argument for appeal. *See United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 197, 805 P.2d 1012, 1018 (App. 1990).

¶19     As noted above in ¶ 5, the statute of limitations issue was first raised by the district court in denying Corbett's motion to amend her complaint in *Corbett I*, when the district court found that her APSA claim was barred by the two-year statute of limitations then in effect, making any amendment futile. *See* A.R.S. § 46-455(K). The district court reasoned that, because Corbett had filed her motion to amend the complaint more than two years after her cause of action had accrued in April 2001, her claim was time barred. *See id.* APSA had originally contained a seven-year statute of limitations, *see* former § 46-455(I), but the legislature amended the statute while *Corbett I* was pending, effective September 18, 2003, reducing the time for bringing claims from seven years to two years after the plaintiff actually discovers the cause of action. 2003 Ariz. Sess. Laws, ch. 129, § 2; § 46-455(K).

¶20     After the district court's ruling denying her motion to amend her complaint in *Corbett I*, Corbett filed a motion urging the court to reconsider its denial of the proposed amendment, relying on A.R.S. § 12-505(C). That statute provides:

> If an amendment of pre-existing law shortens the time of limitation fixed in the pre-existing law so that an action under pre-existing law would be barred when the amendment takes effect, such action may be brought within one year from the time the new law takes effect, and not afterward.

In her motion, Corbett argued that, pursuant to § 12-505(C), she had until September 18, 2004, one year after the date the statutory amendment took effect, to amend her complaint to include the subsidiaries. In denying her motion for reconsideration, the district court relied on this court's decision in *City of Tucson v. Clear Channel Outdoor, Inc.*, 206 Ariz.

11

335, n.5, 78 P.3d 1056, 1059 n.5 (App. 2003). We stated in *Clear Channel* that § 12-505(C) "does not apply . . . when 'an action is not barred by pre-existing law.'" 206 Ariz. 335, n.5, 78 P.3d at 1059 n.5, *quoting* § 12-505(B). The district court reasoned that, because the amended statute became effective on September 18, 2003, and the subsidiaries had not been dismissed until April 14, 2004, her action was not time barred when the amendment took effect. Thus, the district court concluded, Corbett's claim against the subsidiaries "[was] not saved by § 12-505(C)."

**¶21** Our supreme court subsequently vacated our *Clear Channel* decision. *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, ¶ 44, 105 P.3d 1163, 1174 (2005). In April 2005, Corbett filed a motion in the district court pursuant to Rule 60(b), Fed. R. Civ. P., arguing the supreme court's *Clear Channel* decision constituted "an intervening change in the controlling law" that required reconsideration of the district court's grant of summary judgment in favor of defendant Manor Care, Inc. The district court denied the motion, stating Corbett's notice of appeal, filed in October 2004, had divested it of jurisdiction to consider her motion. *See Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004) ("The district court lacked jurisdiction to entertain the Rule 60(b) motion, which was filed after the notice of appeal had been filed, thereby stripping the district court of its jurisdiction.").

**¶22** From this procedural history, we find Corbett did not have a full and fair opportunity to litigate the issue of the amended statute of limitations on her APSA claim. First, the applicability of the statute of limitations was raised sua sponte by the district court

12

in the first instance rather than by the parties. Second, Corbett was unable to litigate the effect of the supreme court's *Clear Channel* decision on the applicability of the amended statute because the district court ruled that it lacked jurisdiction to consider her argument. Thus, Corbett's opportunity to litigate the applicability of the amended statute of limitations was limited, and applying collateral estoppel to bar actual, future litigation on that issue would therefore be inappropriate. *See, e.g., Littlejohn*, 321 F.3d at 923 (finding issue preclusion inappropriate when party did not have "the opportunity to fully litigate" issue in prior proceeding); *see also Gospel Missions*, 328 F.3d at 553 (finding issue preclusion inappropriate when basis for decision "neither framed in the pleadings nor contested by the parties" in prior proceeding); *Powers*, 184 Ariz. at 237, 908 P.2d at 51 (finding issue preclusion inappropriate because pertinent issue not actually litigated in prior proceeding).

¶23 Furthermore, we agree with Corbett's other argument that, regardless of whether the elements of collateral estoppel are present, she should not be precluded from litigating the issue of whether her APSA claim is timely because of the supreme court's *Clear Channel* decision. Corbett cites the Restatement (Second) of Judgments § 28 (1982),[5] which states:

> Although an issue is actually litigated and determined by a valid
> and final judgment, and the determination is essential to the

[5]We recognize that, in her response to the subsidiaries' motion for summary judgment in the trial court, Corbett did not specifically mention the Restatement (Second) of Judgments § 28 in arguing that she should not be estopped from pursuing her APSA claim in *Corbett II*. But she did argue that, in denying her motion for reconsideration, the district court had relied on case law that had subsequently been overturned. Thus, because she identified and argued the central issue, we address her argument.

13

judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

. . . .

(2) The issue is one of law and . . . (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws . . . .

**¶24** The United States Supreme Court has stated that collateral estoppel may not apply in certain situations, such as when "controlling facts or legal principles have changed significantly since the [prior] judgment." *Montana*, 440 U.S. at 155, 99 S. Ct. at 974-75; *see also State v. Whelan*, 208 Ariz. 168, ¶ 16, 91 P.3d 1011, 1016 (App. 2004) (applying Restatement § 28 exception in Arizona). Although a misapplication of the law does not trigger the applicability of the exception to collateral estoppel, an intervening change in the law will. *Richey v. United States Internal Revenue Serv.*, 9 F.3d 1407, 1412 (9th Cir. 1993). Corbett argues that the supreme court's *Clear Channel* decision is such an intervening change in the law, requiring a redetermination of the issue of the applicability of APSA's amended statute of limitations after the parties have had a full and fair opportunity to litigate it.

**¶25** In its *Clear Channel* decision, the supreme court addressed the footnote in this court's *Clear Channel* opinion on which the district court relied in denying Corbett's motion for reconsideration. The supreme court disagreed with our conclusion that § 12-505(C) does not apply when an action is not barred by pre-existing law. *Clear Channel*, 209 Ariz. 544, ¶ 33, 105 P.3d at 1171. Rather, the court concluded that § 12-505(C)

14

"covers those cases in which the cause of action is not barred by pre-existing law, but when application of the new statute of limitations would bar the claim." 209 Ariz. 544, ¶ 35, 105 P.3d at 1172. In other words, the supreme court interpreted § 12-505(C) as follows: "If a claim would have been timely filed under the old law but not the new, under [§ 12-505(C),] the plaintiff has one year from the effective date of the new law to file suit." 209 Ariz. 544, ¶ 42, 105 P.3d at 1173. Corbett sought to amend her *Corbett I* complaint to include the subsidiaries in April 2004, which would have been timely under the former seven-year limitation period for APSA claims. Thus, under our supreme court's decision in *Clear Channel*, she had until September 18, 2004, one year from the effective date of the new limitation period, to amend her complaint.

¶26 Accordingly, we agree with Corbett that there has been an intervening change in the law sufficient to trigger the exception to collateral estoppel in Restatement § 28 and discussed by the Supreme Court in *Montana*. In this case, our supreme court overturned the very portion of this court's *Clear Channel* decision upon which the district court relied. Our supreme court's *Clear Channel* decision thus constituted such an intervening change in the law. *See, e.g., Segal v. Am. Tel. & Tel. Co.*, 606 F.2d 842, 845 (9th Cir. 1979) ("Issue preclusion does not compel reapplication of a remedy since held erroneous as a matter of law."); *see also Whelan*, 208 Ariz. 168, ¶ 16, 91 P.3d at 1016 (appellate court decision issued after dismissal without prejudice in criminal case constituted intervening change in law that prevented state from being collaterally estopped from refiling charges).

15

¶27 In sum, we conclude that at least one of the elements necessary for collateral estoppel is not present here because Corbett did not have a full and fair opportunity to litigate the applicability of the amended statute of limitations. And, even assuming the elements of collateral estoppel are present, we further conclude that the Restatement § 28(2)(b) exception for an intervening change in the law applies. Thus, Corbett is not estopped from litigating in *Corbett II* the issue of whether her APSA claim against the subsidiaries is timely.[6]

B. Employees

¶28 Corbett next argues the trial court erred in granting summary judgment to the employees on her APSA claim. The court found that Corbett was "collaterally estopped from relitigating her claims arising from" Loucks's stay at the Tucson facility because of the district court's rulings denying Corbett's motion to amend her complaint, that the statute of limitations had expired on all Corbett's claims, and that the employees were not subject to liability under APSA because they were not "employed to provide care" to Loucks. The employees argue on appeal, as they did below, that Corbett's APSA claim is also barred by res judicata because of the district court's rulings denying Corbett's motion to amend her complaint.[7]

---

[6]Because the issue was not raised or argued below or on appeal, we do not address which, if any, of the subsidiaries would potentially be subject to liability under APSA based on whether it owned or operated the Tucson facility.

[7]The trial court did not address this argument.

16

### 1. Collateral estoppel

¶29　　　We first consider Corbett's argument that the trial court incorrectly determined she is collaterally estopped from litigating the issue of whether her APSA claim against the employees was timely. The employees argue that, "to the extent that Corbett II involves the same issues litigated and decided in Corbett I, the [employees] are entitled to assert collateral estoppel as a complete defense." However, as we concluded above, even if the elements of collateral estoppel are met, the intervening change in the law exception applies in this case. The district court's ruling denying Corbett's motion for reconsideration of its denial of her motion to amend her complaint was based on that part of our *Clear Channel* decision that has since been overturned by our supreme court. Thus, Corbett is not estopped from litigating in *Corbett II* the issue of whether her APSA claim against the employees is timely.

### 2. Statute of limitations

¶30　　　Corbett argues the trial court erred in finding that the statute of limitations had expired on her APSA claim.[8] There is no dispute that Corbett's cause of action accrued in April 2001. At that time, she had seven years to file her complaint. As discussed above, after the limitation period was reduced by the 2003 amendment of § 46-455, under § 12-505(C), Corbett had until September 18, 2004, one year from the effective date of the amendment to file her complaint. Corbett filed her complaint in *Corbett II* in June 2004,

---

[8]The trial court raised this ground sua sponte because the employees had argued the statute of limitations barred Corbett's APSA claim in their motion for summary judgment only in the context of their res judicata argument.

17

well within that one-year period. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, ¶ 42, 105 P.3d 1163, 1173 (2005). Therefore, this action was timely as a matter of law, and the trial court erred in granting summary judgment on this ground.[9]

### 3. Applicability of APSA

**¶31** Corbett next asserts that the trial court erred in granting summary judgment to the employees on the ground they "were not 'employed to provide care' to Doris Loucks" under APSA. As she did below, Corbett argues the employees violated A.R.S. § 46-455(B). That statute provides that an APSA claim may be brought against "any person or enterprise that has been employed to provide care" or that "has assumed a legal duty to provide care . . . to [an] incapacitated or vulnerable adult for having caused or permitted" the abuse, neglect, or exploitation of the adult.[10]

**¶32** The employees assert that the statute requires a direct caregiver-patient relationship for a duty to arise. The employees rely on *Estate of McGill v. Albrecht*, 203 Ariz. 525, 57 P.3d 384 (2002), arguing that, because "liability under APSA arises from the relationship between a vulnerable adult and her care provider," they cannot be liable under APSA. They rely on the following language in *McGill*:

---

[9]Given our conclusion, we need not consider Corbett's contention that her action would have been saved by A.R.S. § 12-504(A). We likewise need not address the subsidiaries' counterargument that Corbett's contention constitutes an "improper attempt at a horizontal appeal."

[10]The statute does limit the liability of certain health care providers, but the employees do not argue that this limitation applies to any of them. *See* A.R.S. § 46-455(B), (C).

> We hold . . . that to be actionable abuse under APSA, the negligent act or acts (1) must arise from the relationship of caregiver and recipient, (2) must be closely connected to that relationship, (3) must be linked to the service the caregiver undertook because of the recipient's incapacity, and (4) must be related to the problem . . . that caused the incapacity.

*Id*. ¶ 16.

**¶33** However, the employees' reliance on *McGill* for their proposition that APSA requires a direct caregiver-patient relationship is misplaced. The primary issues in *McGill* were whether a single negligent act triggered liability under APSA and whether the legislature intended the remedies of the Medical Malpractice Act and APSA to be mutually exclusive. 203 Ariz. 525, ¶¶ 10, 18, 57 P.3d at 387-89. In applying the above quoted language to the facts of the case before it, the court in *McGill* found that the allegedly negligent acts did arise from and were closely connected to the relationship between the caregiver and patient. *Id.* ¶ 24. But, contrary to the employees' assertion, *McGill* does not require a *direct* caregiver-patient relationship for liability to arise under APSA.

**¶34** Our interpretation of APSA leads us to a different conclusion from that urged by the employees and apparently adopted by the trial court. Our goal when interpreting statutes is to give effect to the legislative intent. *See Mercy Healthcare Ariz., Inc. v. Ariz. Health Care Cost Containment Sys.*, 181 Ariz. 95, 98, 887 P.2d 625, 628 (App. 1994). Our supreme court has stated: "The legislature's intent and the policy behind the elder abuse statute are clear. Arizona has a substantial population of elderly people, and the legislature was concerned about elder abuse." *In re Guardianship/Conservatorship of Denton*, 190 Ariz. 152, 156, 945 P.2d 1283, 1287 (1997); *see also McGill*, 203 Ariz. 525,

19

¶ 6, 57 P.3d at 387 ("[T]he statute was intended to increase the remedies available to and for elderly people who had been harmed by their caregivers."); *Davis v. Zlatos*, 211 Ariz. 519, ¶ 19, 123 P.3d 1156, 1161 (App. 2005). Our interpretation of the statute must be consistent with this legislative intent.

**¶35** And "statutory language controls our interpretation when the language is clear and unequivocal." *Mercy Healthcare*, 181 Ariz. at 98, 887 P.2d at 628. Moreover, we give meaning to each word or phrase in a statute so none is rendered insignificant, contradictory, superfluous, or void. *Weitekamp v. Fireman's Fund Ins. Co.*, 147 Ariz. 274, 275, 709 P.2d 908, 909 (App. 1985). Under the plain wording of the statute, an incapacitated or vulnerable adult can bring a lawsuit against "any person or enterprise" that "has been employed to provide care" or that "has assumed a legal duty to provide care" if the person or enterprise has "caused or permitted" the incapacitated or vulnerable adult to be abused, neglected, or exploited. § 46-455(B).

**¶36** Following the principles of statutory interpretation set out above, we find that the legislature did not intend to limit liability to those who have a direct caregiver-patient relationship with an incapacitated or vulnerable adult. The statute subjects to liability both persons and enterprises, not just individuals. Furthermore, the statute subjects to liability those who cause or *permit* the abuse, neglect, or exploitation of an incapacitated or vulnerable adult. § 46-455(B). Thus, the statute applies to a broader class of tortfeasors than the trial court implicitly found.

20

¶37　　　　However, defendants Ormond, Parades, Weikel, and Martinez contend they are not subject to liability under APSA because they were employees of the parent company, Manor Care, Inc. and "were not even in the State of Arizona at the time of Loucks's stay at the facility." Corbett does not dispute this contention. She also does not dispute their further contention that they never "met, spoke to, or had any personal contact with Ms. Loucks" and that "they had no personal knowledge of her condition, her care, or her treatment while she was a patient" at the facility. Therefore, the trial court correctly granted summary judgment to these employees on the ground they were not employed to provide care to Loucks. Given that these employees were not employed by any of the subsidiaries and that they had no knowledge of Loucks and were not involved with her care, we find no error in the trial court's entry of judgment in their favor.

¶38　　　　The same cannot be said about defendant Elie, who was employed as the director of nursing at the Tucson facility at the time Loucks was there. According to an uncontroverted affidavit by the vice president of Manor Care, Inc., employees of the Tucson facility are not employees of Manor Care, Inc. According to Elie's deposition, which Corbett submitted in support of her opposition to the motion for summary judgment, Elie was not present at the facility when Loucks was admitted on April 10, 2001, but she became aware of Loucks's presence there on April 16, when she returned to work after a two-week vacation. Elie also stated that, as director of nursing, she was responsible for managing the daily operations of the department of nursing services at the Tucson facility, which included overseeing patient care and staff education, "helping to direct . . . the clinical aspects of

21

resident care," managing the staff, and ensuring that federal and state regulations were followed.

¶39    Corbett's APSA claim was based, in part, on her assertion that the employees had violated APSA by permitting Loucks to be abused and neglected by other employees. Based on Elie's deposition, and given our construction of the statute as not requiring a direct caregiver-patient relationship, we conclude that Elie did not meet her burden of showing that no genuine issue of material fact exists on whether she was employed to provide care to Loucks and that she is not entitled to judgment as a matter of law on that claim.[11]  *See Schwab v. Ames Constr.*, 207 Ariz. 56, ¶ 15, 83 P.3d 56, 60 (App. 2004).  Accordingly, the trial court erred in granting summary judgment to Elie on that ground.

    4. Res judicata

¶40    We next consider whether the doctrine of res judicata bars Corbett's APSA claim against Elie because of the district court's rulings regarding the statute of limitations. As discussed above, res judicata bars a second action between the same parties or their privies based on the same claim once a judgment on the merits has been entered in a prior proceeding. *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 973 (1979); *Di Orio v. City of Scottsdale*, 2 Ariz. App. 329, 331, 408 P.2d 849, 851 (1965). Elie concedes she was not a party to *Corbett I*.  But she nonetheless contends the district court's rulings on the statute of limitations preclude Corbett's claim against her as a privy of the subsidiaries

---

[11]Our decision here does not preclude Elie from filing another motion for summary judgment as the case develops.

22

because of their principal-agent relationship. *See Scottsdale Mem'l Health Sys., Inc. v. Clark*, 157 Ariz. 461, 466, 759 P.2d 607, 612 (1988) ("[T]he preclusive effect of a judgment is limited to parties and persons in privity with parties."); *see also Daystar Invs., L.L.C. v. Maricopa County Treasurer*, 207 Ariz. 569, ¶ 15, 88 P.3d 1181, 1185 (App. 2004). Examples of persons in privity include employers and employees, principals and agents, and indemnitors and indemnitees. *See Aldrich & Steinberger v. Martin*, 172 Ariz. 445, 448-49, 837 P.2d 1180, 1183-84 (App. 1992).

**¶41** As an employee of one of the subsidiaries, Elie is in privity with her subsidiary employer, and Corbett does not dispute this. However, as we have noted above, all the subsidiaries had been dismissed from *Corbett I* and were no longer parties to that action at the time of the rulings from which Elie now seeks to benefit. Specifically, because the district court denied Corbett's motion to amend the complaint, the subsidiaries were never again parties to that action after being dismissed. Thus, because the "party" with whom Elie claims privity was not a party when the rulings at issue in the prior proceeding were rendered, an essential element of res judicata has not been met. Therefore, Corbett's APSA claim against Elie is not barred under the doctrine of res judicata.

**Attorney Fees**

**¶42** Lastly, Corbett contends insufficient evidence supports the trial court's award of attorney fees to the subsidiaries and the employees. The trial court awarded attorney fees under A.R.S. § 12-349(A) and Rule 11(a), Ariz. R. Civ. P., 16 A.R.S., Pt. 1. At oral argument in this court, the subsidiaries and the employees abandoned their argument that

23

they were entitled to fees under § 12-349(A). Therefore, we address only the propriety of the award of fees as a Rule 11 sanction. Rule 11 permits sanctions on an attorney or party who files a claim or defense that is groundless or brought for an improper purpose. The sanction may include an order to pay the other party's attorney fees. We review a trial court's imposition of Rule 11 sanctions for an abuse of discretion. *Linder v. Brown & Herrick*, 189 Ariz. 398, 407, 943 P.2d 758, 767 (App. 1997).

¶43　　In view of our reversal of summary judgment on Corbett's APSA claim against the subsidiaries and Elie, insufficient evidence supports the award of fees as a Rule 11 sanction.[12] The trial court may, however, revisit the issue of attorney fees when the trial court proceedings have concluded. *See Johnson v. McDonald*, 197 Ariz. 155, ¶ 30, 3 P.3d 1075, 1082 (App. 1999).

## Cross-Appeal

¶44　　Following the trial court's entry of summary judgment and award of attorney fees to the subsidiaries and employees, they moved for sanctions, presumably under Rule 11, against Corbett "in her personal capacity" and against her attorney to have them held personally responsible for paying the fees. The trial court assessed fees against the estate as the plaintiff but denied the motion for sanctions. The subsidiaries and employees cross-appeal from that denial.

---

[12]*See Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 497, 803 P.2d 900, 908 (App. 1990) (finding on appeal that trial court improperly granted summary judgment indicates claim or defense not frivolous).

24

¶45      But, because we have concluded the trial court's award of attorney fees as a Rule 11 sanction was inappropriate against the estate, it follows that we find no abuse of discretion in the trial court's denial of the subsidiaries and employees' motion to sanction Corbett and her attorney personally.

**Disposition**

¶46      We affirm the trial court's dismissal of Richard Park. We affirm the trial court's grant of summary judgment on Corbett's negligence and breach of contract claims. Because genuine issues of material fact exist on whether the subsidiaries and Elie are subject to liability under APSA, we reverse the summary judgment in their favor on that claim and remand the case for further proceedings. The judgment in favor of the remaining employees is affirmed.

¶47      The trial court's award of attorney fees is vacated. The trial court's denial of sanctions is affirmed. We deny the subsidiaries and employees' request for attorney fees on appeal.

_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
JOHN PELANDER, Chief Judge

25

_____
JOSEPH W. HOWARD, Presiding Judge