NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ARIZONA LAND ADVISORS, LLC dba
LAND ADVISORS ORGANIZATION,
*Plaintiff/Appellant/Cross-Appellee,*

*v.*

STUDIO CITY LOFTS, LLC, an
Arizona limited liability company,
*Defendant/Appellee/Cross-Appellant.*

No. 1 CA-CV 15-0402
FILED 7-14-2016

---

Appeal from the Superior Court in Maricopa County
No. CV2014-012556
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

---

COUNSEL

Fennemore Craig, PC, Phoenix
By Gerald L. Shelley, Emily Ayn Ward
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Morrill & Aronson, PLC, Phoenix
By K. Layne Morrill, Martin A. Aronson
*Counsel for Defendant/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Donn Kessler joined.

---

**J O H N S E N**, Judge:

**¶1**        Arizona Land Advisors, LLC, appeals the superior court's entry of summary judgment in favor of Studio City Lofts, LLC. Studio City cross-appeals the court's order awarding it only a portion of its attorney's fees. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        John Lupypciw was the sole manager of Studio City from June 2011 until July 17, 2012, when the other members removed him from that position by amending the company's Articles of Incorporation. The following day, Studio City filed the amendment with the Arizona Corporation Commission. Notwithstanding that he was no longer the company's manager, on February 4, 2013, Lupypciw signed an agreement with Land Advisors, purportedly on behalf of Studio City, granting Land Advisors a one-year exclusive right to sell a parcel of real property owned by Studio City. Pursuant to the agreement, if the property were sold during the one-year term, Land Advisors would receive a six-percent commission. In such event, the agreement did not condition payment of the commission on Land Advisors' having introduced the buyer to the property.

**¶3**        Two days after Lupypciw signed the listing agreement, Studio City entered an involuntary bankruptcy. On July 1, 2013, the bankruptcy was resolved by a settlement agreement to which Land Advisors was not a party. The settlement agreement, *inter alia*, provided that "Lupypciw shall have the authority, subject only to bankruptcy court approval, to sell or refinance the Real Property for a period of 60 days."

**¶4**        Without Land Advisors' involvement but still within the one-year term of the listing agreement, Studio City sold the property on September 27, 2013. Land Advisors then sued Studio City, alleging breach of contract and seeking its commission. On cross motions for summary judgment, the superior court entered judgment in favor of Studio City and against Land Advisors. The court also granted Studio City's request for attorney's fees and costs, awarding it $10,000 of its requested $23,559 in fees.

**¶5** Land Advisors timely appealed from the superior court's order and Studio City filed a timely cross-appeal. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (2016).[1]

## DISCUSSION

### A. Land Advisors' Appeal: Ratification.

**¶6** The issue in Land Advisors' appeal is whether Studio City ratified Lupypciw's execution of the listing agreement, such that Studio City is bound by the agreement even though Lupypciw was no longer the company's manager when he signed it. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review the grant of a motion for summary judgment *de novo* and view the facts in the light most favorable to the party against which judgment was entered. *Corbett v. ManorCare of America, Inc.*, 213 Ariz. 618, 621-22, ¶ 2 (App. 2006).

**¶7** Land Advisors argues Studio City ratified Lupypciw's execution of the listing agreement when it agreed to the following provision in the bankruptcy settlement agreement:

> Notwithstanding the foregoing, Lupypciw shall have the authority, subject only to bankruptcy court approval, to sell or refinance the Real Property for a period of 60 days from the date of execution of this agreement. . . . *The Parties recognize and acknowledge that Lupypciw has been engaged in ongoing and active attempts to refinance or sell the Real Property.* He remains optimistic that he will be able to sell or refinance the property within the next 60 days for an amount well in excess of $1.5 million. [Studio City and its creditors] are willing to accept this discounted payoff figure for a period of 60 days . . . in a sincere hope that the property will be quickly sold or refinanced and that they will receive the discounted payoff figure of $1.5 million.

---

[1] Absent material revision after the relevant date, we cite a statute's current version.

(Emphasis added.) Land Advisors argues the italicized language constituted a ratification by Studio City of Lupypciw's efforts to sell the property, necessarily including Lupypciw's entering into the listing agreement.

¶8 "Arizona courts generally follow the Restatement of Agency." *Fid. & Deposit Co. of Md. v. Bondwriter Sw., Inc.*, 228 Ariz. 84, 90, ¶ 30 (App. 2011) (quoting *Ruesga v. Kindred Nursing Centers, L.L.C.*, 215 Ariz. 589, 597 n.5, ¶ 28 (App. 2007)). The Restatement (Third) of Agency (2006) ("Restatement") defines ratification as "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement § 4.01(1). One may ratify the act of another by "manifesting assent" to the act or by "conduct that justifies a reasonable assumption that the person so consents." Restatement § 4.01(2). Ratification requires intent to ratify, coupled with full knowledge of all the material facts. *United Bank v. Mesa N. O. Nelson Co., Inc.*, 121 Ariz. 438, 440 (1979).

¶9 It is undisputed that Studio City did not know that Lupypciw had signed the listing agreement with Land Advisors. Land Advisors argues Studio City nonetheless ratified Lupypciw's execution of the listing agreement when it signed the bankruptcy settlement agreement knowing that it was not aware of everything that Lupypciw might have done in his "ongoing and active attempts to refinance or sell the Real Property." Land Advisors cites the comment to Restatement § 4.06, which states, "A principal may choose to affirm without knowing the material facts." Restatement § 4.06 cmt. b; *see also* Restatement § 4.01 cmt. b ("The principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking.").

¶10 In support of its argument, Land Advisors cites *Grabois v. BMO Harris Bank, N.A.*, 1 CA-CV 13-0164, 2015 WL 4040612 (Ariz. App. June 30, 2015) (mem. decision). In that case, this court cited § 4.06 in holding that a person ratified a refinancing by his actions even though he asserted he did not know the specifics of the transaction. *Id.* at *5, ¶ 21. Although Land Advisors contends the same principle applies here, when read in context, the Restatement allows a much narrower exception to the general rule that ratification may occur only when the principal has knowledge of the material facts.

¶11 As the comment to § 4.06 explains, a principal may ratify without knowing all the facts when the principal acts after failing to

investigate despite having "knowledge of facts that would have led a reasonable person to investigate further . . . ." Restatement § 4.06 cmt. d. Land Advisors argues that Studio City had to know that, if, as the bankruptcy settlement said, Lupypciw had been "engaged in ongoing and active attempts to refinance or sell the Real Property," he must have retained a broker to do so. Land Advisors' argument sweeps too broadly. Land Advisors was not a party to the settlement and, as stated, there is no evidence that Studio City knew that Lupypciw had somehow engaged with Studio City. As a stranger to the alleged ratifying act, Land Advisors may not use it to bind Studio City to a liability of which Studio City had no knowledge. To be sure, assent need not be communicated to the third party in order to constitute ratification. Restatement § 4.01 cmt. b, d. But under the "ratification without knowledge" theory that Land Advisors presses, the principal must make a choice to ratify. Restatement § 4.01 cmt. b. ("The principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking."). *See id.*; cmt. d ("[T]he focal point of ratification is an observable indication that the principal has exercised choice and has consented."). Land Advisors failed to offer evidence sufficient to create a genuine issue of fact that by assenting to the language in the bankruptcy settlement agreement, Studio City chose to ratify everything Lupypciw might have done in attempting to refinance or sell the property.

**¶12** Land Advisors' reliance on *Grabois* is similarly misplaced. In that case, there was abundant evidence that the principal knew that the loan had been refinanced. The principal made multiple draw requests against the loan in excess of the original loan amount, and he received monthly statements bearing the refinanced loan identification number. *Grabois*, 1 CA-CV 13-0164, at *6, ¶¶ 26-27. Not only did the evidence show the principal was aware of the refinancing, the principal consented to the refinancing by accepting the benefit of the transaction and drawing against the refinanced loan. Land Advisors offered no such evidence during the briefing on the cross motions for summary judgment. Even viewing the facts in the light most favorable to Land Advisors, there is no evidence that Studio City ratified the listing agreement. For that reason, the superior court did not err in granting summary judgment in Studio City's favor.

## B. Studio City's Cross-Appeal: Attorney's Fees.

**¶13** In its cross-appeal, Studio City argues the superior court erred when it awarded only a portion of the attorney's fees it requested. We

5

review an award of attorney's fees for an abuse of discretion. *Motzer v. Escalante*, 228 Ariz. 295, 296, ¶ 4 (App. 2011).

**¶14** The superior court granted fees pursuant to A.R.S. § 12-341.01 (2016), which states, "In any contested action arising out of contract, express or implied, the court may award the successful party reasonable attorney fees." A.R.S. § 12-341.01(A). Although Studio City argues the circumstances warranted an award of all of the requested fees, the statute is permissive and in no way guarantees the successful party all of its fees: "The award of reasonable attorney fees pursuant to this section should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney fees actually paid or contracted[.]" A.R.S. § 12-341.01(B).

**¶15** In making its fees award, the superior court explained, "The Court awards only $10,000.00 in fees, as opposed to the $23,559.00 requested, because, as [Land Advisors] points out, this is a 'single count Complaint that did not require any discovery and only entailed one round of dispositive motion filings.'" On this record, we cannot say the superior court abused its discretion. *See City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 195 (App. 1994) (court will uphold an award of attorney's fees "if the record contains a reasonable basis to do so").

## CONCLUSION

**¶16** For the foregoing reasons, we affirm the superior court's entry of summary judgment in favor of Studio City and the court's award of attorney's fees and costs. In our discretion, we deny both parties' requests for attorney's fees on appeal. Given our disposition of the appeal and the cross appeal, neither side is entitled to receive its costs on appeal.



Ruth A. Willingham · Clerk of the Court
FILED: AA